**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 15 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

In re: DOUGLAS THORPE,

               Debtor,

------------------------------

DOUGLAS THORPE,

               Appellant,

  v.

TJ 12, LLC,

               Appellee.

No.   22-60042

BAP No. 21-1216

MEMORANDUM[*]

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brand, Taylor, and Lafferty III, Bankruptcy Judges, Presiding

Submitted September 13, 2023[**]
Phoenix, Arizona

Before: GOULD, HURWITZ, and BUMATAY, Circuit Judges.

This is an appeal from a Bankruptcy Appellate Panel ("BAP") decision

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

affirming a judgment entered in an adversary proceeding holding that Douglas Thorpe ("Thorpe") did not have an equitable mortgage on his residence. "We review the BAP's decision de novo, and we review the underlying bankruptcy court decision using the same standard of review the BAP did." *In re Hutchinson*, 15 F.4th 1229, 1232 (9th Cir. 2021) (citations omitted). We have jurisdiction under 28 U.S.C. § 158(d) and affirm.

1. Citing Arizona law, Thorpe first argues that the appropriate standard of review of the bankruptcy court's finding about the intentions of the parties in entering into the relevant transaction is de novo because the substantive facts are undisputed. But the intent of the parties is an issue of fact under Arizona law. *See Shelton v. Cunningham*, 508 P.2d 55, 58 (Ariz. 1973); *Merryweather v. Pendleton*, 372 P.2d 335, 338 (Ariz. 1962). In any event, "the proper standard of review is a question of federal procedure and is governed by federal law," *Rosenbloom v. Pyott*, 765 F.3d 1137, 1147 n.8 (9th Cir. 2014) (citation omitted), and Thorpe concedes that federal courts review for clear error a trial court's finding about "the intention of the parties" to create a mortgage, *Stephens v. Arrow Lumber Co.*, 354 F.2d 732, 734 (9th Cir. 1966); *see also In re Corey*, 892 F.2d 829, 837–38 (9th Cir. 1989) (similar); *Nat. Res., Inc. v. Wineberg*, 349 F.2d 685, 688 (9th Cir. 1965) (reviewing equitable-mortgage determination for clear error).

2. "In determining whether a transaction was for security purposes or was a

bona fide sale," Arizona courts consider multiple factors, none of which is determinative. *Merryweather*, 372 P.2d at 340–41. Applying those factors, the bankruptcy court did not clearly err in finding the transaction was a sale.

a.  The BAP correctly recognized that no more than three factors support recharacterizing the sale of the house as a loan. These factors were: Thorpe's financial distress at the time of the transaction, *see Shelton*, 508 P.2d at 58; the amount of the purchase price, which was approximately the amount of existing indebtedness on the residence, *see Merryweather*, 372 P.2d at 340; and the contemporaneous option agreement, *id.* at 341.

b.  But, as the BAP recognized, the bankruptcy court did not clearly err in finding that the remaining factors indicate that the challenged transaction was—as the relevant documents indicate—a sale, not a secured loan.

i.  The record supports the bankruptcy court's findings that during the negotiations, TJ 12, LLC "did not agree to provide a loan," and that Thorpe hoped to rebuy the property at a later date. *See Merryweather*, 372 P.2d at 340. As the bankruptcy court reasonably put it, it "seems inconceivable" that Thorpe would "borrow $96,000.00 when he only needed $14,000.00" to cure the default on the loan.

ii. The bankruptcy court did not clearly err in finding that the "amount of the consideration paid" was not substantially less than "the actual value of the property

in question." *Id.* at 340–41. The bankruptcy court credited McNaughton's testimony that he believed he would spend $40,000 to $50,000 in "upgrades" before reselling for about $175,000.

iii. Subsequent to the transaction, TJ 12 paid taxes and insurance and owed $1,365 a month to Arizona Instant Funding, LLC on the loan but charged Thorpe only $800 per month in rent for the first year. *See id.* at 341. As the BAP put it, the increase in rent for the second year could indicate McNaughton's "desire to charge a sufficient amount of rent to cover" expenses. The court found credible McNaughton's testimony that text messages he sent to Thorpe did not refer to a loan, but rather to Thorpe's ability to find a buyer or exercise the option to purchase.

iv. Even if the bankruptcy court, when weighing "the relative sophistication of the parties," *Shelton*, 508 P.2d at 58, should not have considered the sophistication of Thorpe's brother and mother, it reasonably found that Thorpe graduated from college and "comes across as an intelligent person who understands the nuances in this case."

v. The record supports the bankruptcy court's finding that neither McNaughton nor TJ 12 was "in the business of loaning money." *Id.* McNaughton testified that neither he nor his entities made any loans secured by real estate in the four years prior to the transaction.

**AFFIRMED**.

4